No. 72,839

STATE OF KANSAS, *Appellee*, v. GREGORY STARR, *Appellant.*

(915 P.2d 72)

Opinion filed April 19, 1996.

*B. Kay Huff*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was on with her on the brief for appellant.

*Ann L. Smith*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Gregory Starr, appeals from convictions of one count of first-degree murder, one count of attempted aggravated burglary, and two counts of aggravated assault. He contends: (1) The trial court had no jurisdiction over the first-degree premeditated murder charge or, in the alternative, that the amended charge deprived him of due process; (2) prosecutorial misconduct during closing argument denied him a fair trial; and (3) the sentence imposed was inconsistent with the Kansas Sentencing Guidelines.

On February 27, 1994, Ethean Johnson, Tyrell Clinton, and Nick Murrell, three students and football players at Coffeyville Community College, went to Henry C's, a nightclub in Coffeyville. At approximately 2 a.m., a confrontation occurred between the students and some others, including a person named Ronnie Scott. The confrontation was broken up, and the three students got a ride to the nearby Cleveland Apartments, specifically the apartment of Sharon Fields, where they hoped to get a ride back to the college dorms.

According to Nick Murrell, they arrived at Fields' apartment to find a person named Fred already visiting there. Murrell called a friend, Renea Marion, to come pick them up. Some time later, Marion arrived in the parking lot and honked her horn. As the three students walked out the door, Ethean Johnson told Murrell that some persons were heading toward them carrying guns. The students ran back into Fields' apartment and shut and locked the door. At that point, shots were fired and Murrell and Tyrell Clinton ran back into Fields' bedroom and hid in the closet. Once in the closet, however, they discovered that although Fred, the visitor, was in the closet with them, Ethean Johnson was not. After a while, Murrell and Clinton exited the closet and found Johnson mortally wounded, lying in the living room of the apartment.

Gregory Starr was one of the persons charged with the murder of Johnson. He was originally charged with premeditated first-de-

gree murder, or in the alternative, felony murder, as well as aggravated burglary and two counts of aggravated assault. However, prior to trial, the State dismissed the premeditated murder charge as well as the aggravated burglary charge, electing instead to proceed on the felony-murder charge.

At trial, the State presented the testimony of others who were involved. Stacey Johnson testified that he was at Henry C's during the night in question with a group of people, including Larry Clark, Justin Johnson, Adam Davis, Brandon Shields, Ronnie Scott, and Glenn Starr, the brother of the defendant. He stated that during the evening, Ronnie Scott and Glenn Starr got into an argument with "three college dudes." According to Stacey Johnson, the college students left with Keisha Colbert and headed for the Cleveland Apartments.

Johnson then stated that his group left Henry C's and took Scott to Scott's girlfriend's apartment to get a gun. They then went to Starr's parents' house and dropped off Starr. The group then took Justin Johnson to another friend's house to get another gun. Following this, the group went back to Starr's parents' house and were rejoined by Glenn Starr, along with his brother Gregory Starr. Stacey Johnson testified that the defendant was carrying a 9-millimeter pistol.

The group arrived at the Cleveland Apartments and went to Keisha Colbert's apartment looking for the three college students. However, the three students were not there. Stacey Johnson stated that the group then stood around in the parking lot for a while and then saw the students coming out of Sharon Fields' apartment. According to Stacey Johnson, the students went back inside the apartment, and the defendant, along with Glenn Starr, rushed the door. Johnson stated that the defendant fired at the door three or four times. Glenn Starr then kicked the door open, the defendant handed the gun to Glenn, and Glenn then fired inside twice.

Justin Johnson, brother of Stacey Johnson, also testified. His testimony echoed that of his brother regarding the evening's events. Johnson admitted that he provided Ronnie Scott with a Tech .22 caliber automatic pistol but stated that the pistol was never fired during the evening.

David Newton also testified on behalf of the State. Newton testified that he lived in the Cleveland Apartments and on the night in question had paid a visit to Sharon Fields. He encountered the three students there waiting for a ride. As the students were leaving, he heard one of them say, "[T]hey got guns." At that point, shots were fired and Newton got down on the floor. He saw Murrell and Clinton run back toward the bedroom and saw Ethean Johnson lying on the floor as if he had been shot. Newton went to another apartment and called the police.

Renea Marion, the person who had come to pick up the three students, also testified. She stated that she was a college student and friend of Murrell, Clinton, and Johnson. On the night in question, Murrell called her from the Cleveland Apartments and asked her to give the three students a ride back to the dorms. According to Marion, she was to pull into the parking lot and honk, and the students would come out.

Marion testified that when she pulled into the parking lot, a car driven by Larry Clark pulled in behind her, and some people got out. These people joined another group of people who were standing in the parking lot. Marion recognized Glenn Starr and the defendant in the group.

Marion saw the three students come out of an apartment and then saw Glenn and the defendant walking towards them with a gun. Marion stated that the defendant then began shooting and then either the defendant or Glenn kicked open the door. Marion testified that she recognized the defendant because he had been a friend of hers prior to the shooting.

At the end of the State's testimony, the defendant filed a motion to dismiss, arguing that the State had failed to prove aggravated burglary and, as a result, felony murder. After some discussion, the district court denied the motion. The State then moved to amend the complaint to reinstate the charge of premeditated first-degree murder and to amend the charges of aggravated burglary to charge attempted aggravated burglary. The defendant objected, arguing that the amendment was a surprise and also that the amendment prejudiced the defendant. However, the district court overruled

the objections and allowed the changes, making a specific finding that no new crime had been charged.

The defendant presented an alibi defense. Ronnie Scott, one of the participants in the evening's events, admitted going to the Cleveland Apartments but insisted that the defendant was not with the group. Scott testified that he was not present when the shooting occurred because he was in Keisha Colbert's apartment at the time, but he also admitted that he pled guilty to conspiracy to commit aggravated assault because he was in the car.

Glenn Starr testified that he went to the Cleveland Apartments, but only to try to work things out with the college students because of the earlier argument. He stated that he left the area before the shooting started, however. Starr insisted that his brother was never at the apartments.

Adam Davis, another participant, stated that at the Cleveland Apartments he saw Justin Johnson and Glenn Davis go towards the students and that he heard the shots. However, he stated that the defendant was not with the group and he had not seen the defendant the entire night.

Larry Clark, yet another participant, testified that he drove to the Cleveland Apartments but did not get out of the car and that he left before the shooting started. He stated that he did not pick up the defendant and did not see the defendant at the scene.

The defendant testified on his own behalf. He stated that on the evening of the shooting he went to Cowanda Broadway's house until 10:30 p.m. He then returned home and watched television with his parents until they went to bed shortly after 10:30. The defendant then stated that he continued to watch television into the early morning when he heard shots. The defendant testified that his parents' house is only two blocks from the Cleveland Apartments. Shortly thereafter, his brother Glenn came home. Soon after, there were more shots, and both the defendant and Glenn went to see about the noise. The defendant stated that when he arrived at the Cleveland Apartments, he saw an ambulance outside, so he turned around and went home.

During closing arguments, the State argued that the defendant's alibi should not be believed. During this argument, the prosecutor

stated: "He testified his parents were there. Well, where are his parents? Why didn't they testify? We didn't hear from them." The defendant did not object to this comment.

The jury was unable to unanimously find the defendant guilty of either premeditated murder or felony murder but did unanimously find the defendant guilty of first-degree murder based on a combination of those two alternatives. He was also convicted of attempted aggravated burglary and two counts of aggravated assault.

At sentencing, the district court stated that it was sentencing the defendant to life on the murder charge and three 17-month sentences on the attempted aggravated burglary charge and the two aggravated assault charges, to run consecutively. However, in the journal entry, the sentence is reflected as 17 months for the attempted aggravated burglary charge and 13 months each on the aggravated assault charges, to run consecutively.

## (1) JURISDICTION AND DUE PROCESS

### Jurisdiction

The defendant argues that the trial court did not have jurisdiction to try him on the charge of premeditated first-degree murder after it dismissed the charge prior to trial. However, the trial court granted the amendment because it concluded that no additional or different crime was charged. For the reasons stated below, we conclude that the trial court was correct and retained jurisdiction to amend the complaint and try the defendant on the amended charge of first-degree premeditated murder.

K.S.A. 22-3201(e) provides that "[t]he court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if the substantial rights of the defendant are not prejudiced." Thus, determining whether an amendment should be permitted requires a two-part analysis: (1) whether an additional or different crime is charged by the amendment and (2) whether the amendment will prejudice the substantial rights of the defendant. See *State v. Barncord*, 240 Kan. 35, 38, 726 P.2d 1322 (1986).

In *Barncord*, we determined that premeditated and felony murder are not separate and distinct offenses. Instead, a prosecution

under the felony-murder rule changes the type of proof necessary to prove first-degree murder by relieving the State of the burden of proving premeditation and malice. Barncord had been charged with premeditated murder, and during the trial the State moved to amend the complaint to add felony murder. We found that an amendment was not actually necessary as an information alleging that a killing was done with malice aforethought, deliberation, and premeditation is sufficient to sustain a conviction of felony murder. We also found that if an amendment was necessary, no different or additional crime was charged by such an amendment. 240 Kan. at 37-38.

The *Barncord* rationale was applied in *State v. Grissom*, 251 Kan. 851, 926-27, 840 P.2d 1142 (1992). Grissom was charged with the first-degree murder of a victim on the alternate theories of premeditated murder, felony murder with the underlying felony of aggravated burglary, and felony murder with the underlying felony of aggravated kidnapping. At the preliminary hearing, the court found that there was not sufficient evidence to bind the defendant over for felony murder committed during an aggravated kidnapping. However, the court later allowed the State to amend the complaint to its original form at the conclusion of the State's evidence. 251 Kan. at 926. This court found no error in allowing that amendment. 251 Kan. at 927.

The situation now before the court is somewhat similar to *Grissom* and *Barncord*. In the case before us, the State could have proceeded on both the premeditated and felony-murder theories without electing between them. See *State v. Wise*, 237 Kan. 117, 121, 697 P.2d 1295 (1985) (holding that the State is not required to elect between first-degree and felony murder as long as the defendant is apprised of both theories). However, the State did elect to dismiss the charge of premeditated murder. The question, therefore, is what effect this dismissal had on the State's ability to proceed on both theories.

The defendant argues that once a charge is dismissed, the district court loses jurisdiction over that charge. However, the charge of first-degree murder in this case was not dismissed; instead, one of the alternative theories under which the charge could be proven

was dismissed. The district court retained jurisdiction over the charge of first-degree murder, and it appears that the charge could be amended as long as no new or additional offense was charged or the substantial rights of the defendant prejudiced.

Unlike *Barncord*, the State was required to amend the complaint in order to charge premeditated murder. This is because although a charge of premeditated murder alleging that the killing was done with malice, deliberation, and premeditation is sufficient to sustain a conviction of felony murder, a charge of felony murder is not sufficient to sustain a charge of premeditated first-degree murder, as it does not charge premeditation.

Premeditated and felony murder are not separate and distinct offenses but are two separate theories under which the crime of first-degree murder may be committed. The amendment at the close of the State's case charging the defendant under the alternative theory of first-degree premeditated murder when the defendant had been charged with felony murder did not charge an additional or different crime.

Due Process

The defendant argues that by dismissing the theory of premeditated murder, the State indicated to the defense counsel that premeditation and intent were not in dispute or legally relevant and, therefore, defense counsel had no reason to defend against those issues. According to the defendant, the amendment caused surprise and prejudice, denying him due process of law. The question to be resolved is whether the defendant's substantial rights were prejudiced by the amendment. See K.S.A. 22-3201(e).

During oral argument, counsel for the defendant asserted that questions that would normally be asked of witnesses upon cross-examination of the State's witnesses were not asked because the charge of premeditated murder had been dismissed at the beginning of trial. When asked by the court what different questions may have been asked, counsel could furnish none. We also find it difficult to conceive of a different approach by defense counsel at trial. The entire defense to the charge of murder at trial was one of alibi. On cross-examination, the defendant, consistent with his

defense, attacked the credibility of the State's witnesses placing him at the scene. Under these circumstances, we perceive no prejudice flowing from the amendment at the close of the State's case.

Moreover, the State's amendment to proceed on the theory of premeditated murder created no unusual surprise for the defendant. Originally, the defendant was charged under both theories, and only immediately prior to trial was the premeditated murder theory dismissed. Under the circumstances, the defendant should have been prepared to defend against both theories.

Finally, the theory of felony murder relieves the State of the burden of proving premeditation and malice. *State v. Barncord*, 240 Kan. at 38; *State v. Underwood*, 228 Kan. 294, 302-03, 615 P.2d 153 (1980). Instead, these elements are established through proof of the collateral felony. *State v. Underwood*, 228 Kan. at 302. Absent this theory, the State must prove premeditation. The amendment at the close of the State's case to include the alternate theory of first-degree premeditated murder had the effect of creating a greater burden on the State by requiring the State to prove intent and premeditation.

## (2) PROSECUTORIAL MISCONDUCT

The defendant argues that the State committed prosecutorial misconduct by commenting at closing argument on the failure of the defendant's parents to testify in support of the defendant's alibi defense. The defendant argues that these comments impermissibly shifted the burden of proof to the defendant and that the comments were misleading.

The defendant did not object at the time of the prosecutor's comments. However, based upon our recent decision in *State v. Ruff*, 252 Kan. 625, 634-35, 847 P.2d 1258 (1993), he argues that the trial court had an independent duty to stop counsel's argument in order to preserve the defendant's right to a fair trial.

*Ruff* applies only if we conclude that the prosecutor's remarks upon closing amounted to prosecutorial misconduct. We have held that it was not error for the prosecution to comment upon the failure of a defendant to call an alibi witness when exerting an alibi defense. See *State v. Milo*, 249 Kan. 15, 20-22, 815 P.2d 519

(1991); *State v. Mims*, 222 Kan. 335, 337, 564 P.2d 531 (1977). In *Milo*, we cited *United States v. Schultz*, 698 F.2d 365, 367 (8th Cir. 1983), which holds that such a comment does not impermissibly shift the burden of proof to the defendant. 249 Kan. at 21.

The defendant argues that the comment by the State was misleading because it mischaracterized the evidence. The defendant points out that his parents could not have provided him with an alibi because, according to the defendant, they went to bed long before any of the events that led to the shooting occurred. In support of his contention that this alleged mischaracterization constituted prosecutorial misconduct, the defendant again cites *Ruff*.

*Ruff* holds that while it is the duty of the prosecutor to see that the State's case is properly presented with earnestness and vigor and to use every legitimate means to bring about a just conviction, the prosecutor should also bear in mind that he or she is an officer of the court. 252 Kan. at 634. Where counsel refers in closing argument to pertinent facts not before the jury, or appeals to prejudices foreign to the case, it is the duty of the court to stop the prosecutor without waiting for objection from the defense attorney. 252 Kan. at 635.

In this case, counsel's comment was based upon evidence in the record. The defendant asserted an alibi defense for his whereabouts the entire evening, denying that he was a part of any of the actions leading up to and including the shooting. The defendant could have called his parents to testify to his whereabouts at the time they went to bed and to testify that they did not hear him leave the house after they went to bed. We conclude that the prosecutor's comment upon the failure of the defendant to call alibi witnesses when exerting an alibi defense was not error because the comments were based upon fair comment on evidence of record.

### (3) SENTENCING

The defendant contends that the trial court erred in sentencing him to 17 months for each of his on-grid offenses. He argues that the trial court mistakenly used the wrong criminal history category in sentencing him on these two counts.

The defendant was convicted of first-degree murder, an off-grid offense. He was also convicted of one count of attempted aggravated burglary, a severity level 7 offense, and two counts of aggravated assault, also both severity level 7 offenses. He was sentenced to 17 months for each of the on-grid offenses.

Under K.S.A. 21-4720(b)(2), the district court was required to establish a base sentence for the primary crime, which is the crime with the highest severity level. The district court correctly designated one of the aggravated assault charges as the primary, or base, crime. The court sentenced the defendant to 17 months on that charge, consistent with his criminal history level of G.

At this point however, confusion set in. On the two remaining charges, the nonbase offenses, the court should have sentenced the defendant in accordance with a criminal history of I, as required by K.S.A. 21-4720(b)(5), which states: "Nonbase sentences will not have criminal history scores applied, as calculated in the criminal history I column of the grid, but base sentences will have the full criminal history score assigned." This would have led to a sentence of between 11 and 13 months for each of the two remaining offenses. See K.S.A. 21-4704(a).

The court apparently set out to do just that, sentencing the defendant to 13 months on the attempted aggravated burglary charge. However, then the court was reminded by the State that it still needed to sentence on one of the aggravated assault charges. The district court then mistakenly sentenced the defendant to 17 months on the remaining aggravated assault charge and summed up the sentence as 17, 17, and 17 months on the three charges.

The sentence imposed was inconsistent with the Kansas Sentencing Guidelines Act. The journal entry in this case reflects the correction of the error, stating that the defendant is sentenced to 13 months on the two nonbase charges. However, the sentences do not derive their effectiveness from the journal entry but instead are effective when announced. *State v. Royse*, 252 Kan. 394, Syl. ¶ 3, 845 P.2d 44 (1993). The sentences announced by the district court were illegal under the sentencing guidelines. Although the journal entry attempted to correct this illegality, the defendant was not present when the journal entry was filed.

The State, while admitting that a mistake was made, argues that it would be a waste of time and money to return the defendant to Montgomery County for a favorable change of sentence when that change is already in the journal entry. However, the defendant was sentenced in the journal entry to 13 months on each count, which is the maximum sentence on each. Upon resentencing, it is possible that the defendant will be sentenced to either 11 or 12 months on each count. Although the result may very well be exactly the same, this does not change the fact that the defendant must be sentenced in open court. See 252 Kan. at 397. As a result, the defendant's sentences on one count of attempted aggravated burglary and one count of aggravated assault must be vacated and the case remanded for resentencing.

Convictions affirmed, sentences vacated, and case remanded for resentencing.