No. 75,258

STATE OF KANSAS, *Appellee*, v. SOLLY M. THOMPKINS, *Appellant*.

(952 P.2d 1332)

Opinion filed January 23, 1998.

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Solly Thompkins appeals his convictions for first-degree premeditated murder and burglary. He contends that the trial court erred in instructing the jury on first-degree premeditated murder, failing to grant a mistrial, and admitting his probationary status into evidence.

Thompkins and his wife, Frances, had a turbulent relationship. Each had been physically aggressive with the other at various times. Frances had burned Thompkins with a curling iron and, at one point, had to be prevented from obtaining a knife to go after Thompkins. In 1991 and 1992, Frances was granted two petitions for restraining orders against Thompkins, but she later dismissed both petitions.

In August 1994, the couple separated and Frances and her daughter moved to her mother's home. Subsequently, Thompkins began removing items from the couple's home such as the television, air conditioner, and furniture. To vent her anger, Frances trashed the home. On August 29, 1994, Frances applied to the district court for a third "protection from abuse" temporary restraining order. A final restraining order, granted on October 14, 1994, ordered Thompkins to refrain from contact with Frances for 1 year. Frances then retained an attorney to represent her in a divorce.

Around 11:30 a.m. on October 22, 1994, Thompkins arrived at Donnelly College where Frances worked and was a student. When Frances' class ended, Thompkins approached her. After engaging in a heated discussion, the pair got into Frances' car and left the college. Shortly thereafter, Officer Rodney Green noticed Frances and Thompkins sitting in a parked car. After Officer Green heard the car's horn honk, he slowed down and observed the couple struggling. Officer Green then saw Thompkins get out of the car and run. Next, Frances stepped out of the car, covered with blood.

Officer Green pursued Thompkins. Thompkins ran to a private residence, kicked open the back door, and entered the home. When a backup officer knocked at the door, Thompkins appeared and stated that the home belonged to his parents. The home actually belonged to an acquaintance of Thompkins. The officers entered the house, followed Thompkins into the kitchen, and noticed

Thompkins was wearing a woman's skirt. When the officers requested identification, Thompkins obtained identification from his trousers, which were in another room and were covered with blood. In the pocket, the officers found Frances' wedding and cocktail rings. The officers later found a bloody sweater and two black gloves belonging to Thompkins in the basement next to the washing machine.

When another police officer, Granger, arrived at the scene, he found Frances slumped over in the driver's seat of her car. Granger observed a 13-inch butcher knife lying on the ground. Attempts by paramedics to revive Frances failed, and she died at the scene. At trial, the pathologist testified that Frances had sustained a 3-inch stab wound to her right side, a 3-inch stab wound to her left chest, and a 7-inch wound that severed her pulmonary artery. She also sustained multiple abrasions and contusions to her face, blows to her head and lip, a bruise and contusion under her chin, and abrasions on her thighs. Several of her false fingernails were ripped and torn. The pathologist also noted defensive wounds on Frances' hands. When Thompkins was examined for wounds after his arrest, the only wound found was a small puncture wound on his hand. Thompkins' fingerprints were not found on the knife.

At trial, Thompkins was the sole witness for the defense. He testified that Frances was a violent individual who would resort to any weapon at hand when angry. He stated that, in the past, Frances had assaulted him with hot syrup, a skillet, several knives, and a hot curling iron.

Thompkins testified that on the fatal day, he walked to Donnelly College to tell Frances that he planned to leave town and to discuss with her the future of their daughter and the sale of their residence. Frances agreed to let him ride in her car so they could talk. After driving away from the college, Frances informed Thompkins she had filed for divorce. Thompkins stated he told Frances that as long as she was wearing his rings, she would be his wife. Frances then parked at a curb, threw her rings at him, and began a heated discussion.

During the discussion, Thompkins noticed a patrol car drive by. At that point, he testified that Frances was holding a knife. He

stated he grabbed Frances' hand and the knife "poked her in the side." He claimed Frances threatened to kill him and, as they struggled over the knife, the knife "hit" Frances in the chest twice. Thompkins stated that he never intended to harm his wife, but only to respond to her actions. He testified that when he broke into his friend's residence, his intent was to hide from the police, not to steal.

Thompkins was charged with one count of first-degree murder under alternate theories of premeditation and felony murder, aggravated robbery (of Frances' two rings), assault and battery of Frances, burglary (of his friend's residence), and two misdemeanors. The premeditated murder charge was dismissed at the preliminary examination. After a jury trial, Thompson was convicted of first-degree premeditated murder and burglary. He appeals his convictions, claiming the trial court erred in (1) instructing the jury on first-degree premeditated murder after the judge discharged him on that charge at the preliminary hearing; (2) failing to grant a mistrial when a witness improperly referred to his post-arrest silence; and (3) admitting into evidence the fact that he was on probation when the crime was committed. To determine the issues Thompkins raises in this appeal, it is necessary to review the proceedings prior to trial in detail.

## PROCEEDINGS

At the conclusion of the preliminary examination, the district judge found that since there was no evidence of premeditation, the evidence was insufficient to bind Thompkins over on the premeditated first-degree murder charge. Thompkins was bound over for trial on the other felony charges and immediately arraigned on first-degree felony murder, aggravated robbery, assault, battery, and burglary even though the State had not filed an information charging the crimes for which the defendant was bound over, as required by K.S.A. 22-2905.

After the judge dismissed the premeditated murder charge at the preliminary examination and arraigned the defendant on other charges, the State chose neither to follow the statutory procedure to appeal the dismissal of the premeditated murder charge nor to

dismiss the complaint and file a new complaint charging premeditated murder. The State did not even file a motion requesting the judge to reconsider dismissal of the premeditated murder charge. Instead, on February 8, 1995, without having filed an information charging the crimes for which Thompkins had been bound over, the State elected to file an amended information charging Thompkins with premeditated first-degree murder as well as with the crimes for which he had been arraigned and to which he had pled not guilty at the arraignment.

On February 13, 1995, the State filed a motion to proceed under the amended information. At the subsequent hearing on the motion, the State contended that it was not asking the trial judge to reverse the other judge's ruling dismissing the premeditated murder charge at the preliminary examination, as "that matter [could] effectively be taken up on appeal by the State, if necessary." Instead, the State asked the trial judge to allow the case to proceed to trial under the amended information which charged both theories of first-degree murder, *i.e.*, premeditated and felony murder.

In denying the State's request to proceed under the amended information, the trial judge found that the preliminary examination judge's ruling finding no probable cause to bind Thompkins over for arraignment on a premeditated murder charge was an adjudication that was "res judicata as far as this case is concerned." The judge stated that, under normal circumstances, if the State had charged felony murder, he would have allowed the State to amend the information to charge the defendant with premeditated murder. The judge concluded that since there had been a previous adjudication that there was insufficient evidence of premeditation to bind Thompkins over on that charge at the preliminary examination, the State had no statutory authority to amend the information to charge premeditated murder.

After its motion to proceed under the amended information was denied, the State suggested that if it presented sufficient evidence of premeditated murder during the trial, the judge could instruct the jury on all crimes supported by the evidence. The district judge stated, "I don't think either party would disagree the Court has the ability to mold the charge to fit the facts at trial. . . . I think this

Court has the ability and statutory authority to amend the charges to reflect what the evidence is that is adduced at trial." Presumably the judge was referring to K.S.A. 22-3201(e), which provides that the court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. Based upon the judge's ruling, the prosecutor stated that she would not refer to premeditation in her opening statement. Defense counsel did not object to the State's suggestion.

In a subsequent pretrial conference, the district judge stated:

"The only other issue we have to clarify is that I'm not touching Judge Boeding's prior ruling dismissing premeditated murder from its Information. Any evidence, as long as it's relevant, probative, and part of the res gestae, whether it deals with premeditation or felony murder, I'll allow in to determine if, in fact, there will be enough evidence of premeditation to, in fact, instruct the jury on that. The State has to go under the theory of felony murder in voir dire and opening remarks. You can't make references to premeditated murder.

"After all the evidence is in, I'll make another ruling as to whether or not premeditated should come in or not. That ruling will determine how we go into closing remarks and instructions."

Again, defense counsel made no comment or objection to the trial judge's ruling.

At trial, the State referred only to the charge of felony murder in the opening statement. At the close of the State's evidence, the judge dismissed the misdemeanor assault and battery counts. The parties then addressed whether there was sufficient evidence for the judge to instruct the jury on premeditated murder. The State asserted that the repeated stab wounds, the location of the stab wounds, Thompkins' attempts to locate Frances, which included two phone calls prior to her death, and a statement Thompkins had made to officers that his wife was going to leave him and "this" was the only way he (Thompkins) could keep her was sufficient evidence for an instruction on premeditated first-degree murder. The trial judge agreed with the State, found that the evidence supported a reasonable inference of premeditation, and subsequently instructed the jury on both premeditated and felony first-degree murder.

Although defense counsel had previously argued that the evidence was sufficient to support only a second-degree murder or voluntary manslaughter instruction, defense counsel did not object to the instruction on first-degree murder. The jury convicted Thompkins of premeditated first-degree murder and burglary and acquitted him of the aggravated robbery charge. Although the jury had been instructed that it could convict on either or both theories of first-degree murder, because the jury found Thompkins not guilty of the underlying felony, aggravated robbery, it could not convict him of felony murder.

In his post-trial motion for new trial, Thompkins claimed the trial court had erred in admitting improper evidence, failing to declare a mistrial, and violating his due process rights. The basis of his due process claim was that (1) after the dismissal of the premeditated murder charge because of insufficient evidence at the conclusion of his preliminary examination, the State had failed to follow any of the statutory procedures available to challenge the judge's dismissal of that charge and (2) after the State's motion to proceed under the amended information was denied, the trial judge had violated his rights by reinstating the charge of and instructing the jury on premeditated murder. The trial judge denied the motion for a new trial and sentenced Thompkins to life imprisonment without possibility of parole for 25 years for premeditated first-degree murder and 17 months' imprisonment for burglary. When his notice of appeal was filed, the defendant included additional issues that were not raised before the district court.

## DISCUSSION

Before we determine Thompkins' claims, we note that the State, without following the statutory procedure to appeal, claims that (1) Judge Boeding's order discharging Thompkins on the premeditated murder charge at the preliminary examination was erroneous because the judge did not consider the evidence presented in the light most favorable to the State and (2) the trial judge erred in denying the State's pretrial motion to amend the information to add the charge of first-degree premeditated murder. Since the State failed to raise these issues properly, we are precluded from

considering them in this appeal. *State v. Alderson*, 260 Kan. 445, Syl. ¶ 7, 922 P.2d 435 (1996).

## I. Premeditated Murder Instruction

Murder in the first degree is the killing of a human being committed intentionally and with premeditation or in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto. K.S.A. 21-3401. Aggravated robbery is defined as an inherently dangerous felony. K.S.A. 21-3436(a)(4). Although we have stated premeditated murder and felony murder are not separate and distinct offenses, we have noted that the type of evidence necessary to prove each of the first-degree murder charges is different. *State v. Barncord*, 240 Kan. 35, 38, 726 P.2d 1322 (1986). First-degree premeditated murder, K.S.A. 21-3401(a), is the killing of a human being done intentionally and with premeditation. Intentionally means conduct that is purposeful and willful, not accidental. PIK Crim. 3d 56.04(d) (1994 Supp.). Premeditation means that there was a design or intent before the act; that is, the accused planned, contrived, and schemed before killing the victim. PIK Crim. 3d 56.04(b) (1994 Supp.).

The ostensible purpose of the felony-murder doctrine is to deter those engaged in dangerous felonies from killing negligently or accidentally, and the doctrine of felony murder is not to be extended beyond the rational function it was designed to serve. To invoke the felony-murder rule, there must be proof that a homicide was committed in the perpetration of, or an attempt to perpetrate, a felony and that the collateral felony was one inherently dangerous to human life. *State v. Brantley*, 236 Kan. 379, Syl. ¶¶ 1, 2, 691 P.2d 26 (1984).

Although first-degree premeditated murder and felony murder require different types (elements) of proof, under certain circumstances, the accused may be charged with and convicted of both types of first-degree murder. In *State v. Jackson*, 223 Kan. 554, 575 P.2d 536 (1978), the court noted that when an information charges the defendant with premeditated murder and felony murder for the commission of a single homicide, and the State intro-

duces evidence on both theories at the trial, the trial court should instruct the jury on both theories in the alternative in order to avoid confusing the jury. 223 Kan. 554, Syl. ¶ 1. The court noted that where an information charges a defendant with murder in the first degree on both theories—a premeditated killing and killing while in the perpetration of a felony—a defendant is not prejudiced because the State has previously apprised the accused that it is proceeding on both theories of first-degree murder and that it intends to produce evidence on each theory. 223 Kan. at 556 (quoting *State v. Lamb*, 209 Kan. 453, Syl. ¶ 9, 497 P.2d 275 [1972]). The court observed that if Jackson had been separately sentenced for both first-degree murder convictions as the result of one homicide, clearly this would constitute double punishment for a single death and could not be allowed to stand. 223 Kan. at 557. In other words, under circumstances where the accused intends to kill the victim prior to committing a robbery, commits the robbery and kills the victim, the accused may be charged and convicted of each type of first-degree murder. However, since there is only one death, the defendant can only be sentenced for one first-degree murder.

Here, Thompkins was discharged on the charge of first-degree premeditated murder at the preliminary examination because the judge conducting the hearing found there was no evidence of premeditation. In addition, the trial judge had denied the State's motion to proceed under an amended information that included a charge of first-degree premeditated murder. Thompkins argues that, under these circumstances, it was unfair for the State to prosecute and convict him of premeditated first-degree murder.

In response to this argument, the State first points out that Thompkins did not object to the premeditated murder instruction but raised the issue for the first time in a motion for a new trial. It notes that generally, no party may assign as error the giving of an instruction unless he or she objects before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for the objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). Thompkins counters that, under the circumstances, because the instruction was clearly erroneous and prejudiced his substantial rights, he properly raised

that issue in his motion for new trial. See K.S.A. 22-3501. We note that although the defendant failed to object to the instruction, a review of the record shows that he did raise the denial of his due process rights in a motion for new trial.

The primary argument advanced by the State to support the propriety of giving the premeditated murder instruction is that premeditated murder and felony murder are not two different crimes but, under K.S.A. 21-3401, are merely two theories of committing first-degree murder. The State asserts that, when a defendant is bound over on one theory of first-degree murder, if the evidence is sufficient at trial, the judge has statutory authority to instruct the jury on the other theory of first-degree murder. To support this assertion, the State notes that K.S.A. 22-3201(e) provides that the court may permit a complaint or information to be amended at any time before verdict or finding *if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced.*

To support its claim, the State first cites *State v. Smith*, 225 Kan. 796, 594 P.2d 218 (1979). In *Smith*, following the preliminary examination, Smith was bound over on premeditated murder. Prior to trial, the State amended the information to charge felony murder committed during the perpetration of a theft. On appeal, the *Smith* court focused on Smith's claim that he had been prejudiced by the amendment. The court found that Smith's failure to question the sufficiency of the preliminary examination by a motion to dismiss pursuant to K.S.A. 22-3208 constituted a waiver of that issue on appeal. 225 Kan. at 798. Here, unlike Smith, Thompkins challenged the sufficiency of the evidence of premeditated murder at the preliminary examination and won; therefore, *Smith* does not apply.

In further support, the State cites *State v. Richardson*, 256 Kan. 69, 883 P.2d 1107 (1994), where the complaint charged the defendant with first-degree felony murder and aggravated robbery. Before arraignment, Richardson was notified that if she was convicted of aggravated robbery, the State intended to seek the hard 40 sentence. A few days prior to trial, the State orally amended the information to include premeditated murder as an alternative the-

ory of a first-degree murder charge. The State failed to notify Richardson that it would also request imposition of the hard 40 sentence if she was convicted of that crime. Richardson was convicted of premeditated murder and sentenced to life without possibility of parole for 40 years. On appeal, Richardson did not challenge the propriety of the amendment of the information to charge premeditated murder, but instead argued that the hard 40 sentence was illegally imposed for that crime because, at the time the notice required by K.S.A. 1993 Supp. 21-4624(1) was filed and served, she was charged with felony murder and aggravated robbery, not premeditated murder. She claimed that the hard 40 sentence could be imposed for felony murder based upon aggravated robbery, but not for premeditated murder.

In rejecting this claim, the *Richardson* court noted that both premeditated and felony murder may be charged as first-degree murder under K.S.A. 1993 Supp. 21-3401. The court observed that aggravated robbery charged in the information was also included in the list of inherently dangerous felonies in K.S.A. 1993 Supp. 21-3436. It noted that when the district attorney filed and served notice that he intended to request a separate sentencing proceeding pursuant to K.S.A. 1993 Supp. 21-4624, Richardson was charged with felony murder and aggravated robbery. 256 Kan. at 73. The *Richardson* court framed the issue as whether notice that the prosecutor intends to seek the hard 40 sentence for a crime charged in the information allows the hard 40 to be imposed for conviction of a crime not charged at the time statutory notice was given. 256 Kan. at 75.

The *Richardson* court observed that K.S.A. 1993 Supp. 22-3201(e) provided the court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. 256 Kan. at 75. Then, after finding that the hard 40 notice for the aggravated robbery conformed with the statute, the *Richardson* court observed that since K.S.A. 1993 Supp. 21-4624(1) provides for filing of the notice of intent to seek imposition of the hard 40 sentence "[i]f a defendant is charged with murder in the first degree," under the circumstances, the hard

40 sentence for premeditated murder was proper since Richardson had previously been notified that the State had intended to seek the hard 40 sentence if she was convicted of an inherently dangerous crime. 256 Kan. at 75-78.

The State now relies upon the rationale of *Richardson* to argue that premeditated murder and felony murder are not different offenses, but rather two theories of culpability for the same offense. However, the rationale of *Richardson* does not apply to Thompkins because the facts in *Richardson* are distinguishable. Here, there had been a judicial determination at the preliminary examination that there was absolutely no evidence of premeditation, and later the trial judge refused to allow the State to amend the information prior to trial.

The State next relies on *State v. Grissom*, 251 Kan. 851, 840 P.2d 1142 (1992), where Grissom was charged with multiple crimes, including first-degree murder by premeditation and murder in the commission of a felony, either aggravated burglary or aggravated kidnapping. After the preliminary examination, the judge found there was no probable cause to bind Grissom over on the charge of felony murder committed during the perpetration of an aggravated kidnapping, but bound him over on the other charges. At the conclusion of the State's presentation of evidence at trial, the State moved to amend the complaint to add a charge of felony murder in the perpetration of aggravated kidnapping. Over Grissom's objection, the trial court granted the State's motion.

Grissom was convicted of numerous crimes, including first-degree murder, aggravated burglary, robbery, and aggravated kidnapping. On appeal, Grissom claimed the amendment to include aggravated kidnapping caused him irreparable prejudice because it presented a "new theory" of felony murder upon which the jury could find him guilty. The State argued there was no error because it was not required to amend the complaint for the jury to be instructed on an alternative theory of felony murder. The *Grissom* court agreed with the State's argument, noting that an amendment of the complaint to include felony murder based on aggravated kidnapping was not necessary. 251 Kan. at 926-27.

In reaching this conclusion, the *Grissom* court relied, in part, on *State v. Barncord,* 240 Kan. 35, 726 P.2d 1322 (1986). In *Barncord,* at the conclusion of the preliminary examination, the State moved to amend the complaint charging aggravated robbery and first-degree premeditated murder to include an additional charge of felony murder based upon the killing of a human being during the commission of the aggravated robbery. The judge bound the defendant over on the crimes charged in the complaint and took the motion to include an additional crime under advisement. Prior to trial, the judge granted the State's motion to amend. Barncord was convicted of first-degree felony murder and aggravated robbery. On appeal, Barncord claimed that the amendments to the complaint were prejudicial. The *Barncord* court, noting that it was not necessary to amend the complaint because no additional or different crime was charged, stated:

"Premeditated murder and felony murder are not separate and distinct offenses. Rather, a prosecution under the felony-murder rule changes the type of proof necessary to prove first-degree murder. [Citation omitted.] The State is relieved of the burden of proving premeditation and malice when the victim's death is caused by the killer while he is committing another felony." 240 Kan. at 38.

The *Barncord* court also found that Barncord, who had been bound over on premeditated murder, was aware that the judge had taken under advisement the State's motion that he be bound over for felony murder. 240 Kan. at 37-38. Following the rationale of *Barncord,* the *Grissom* court determined that, under the circumstances, Grissom was not prejudiced by the amendment. 251 Kan. at 927.

Next the State cites *State v. Starr,* 259 Kan. 713, 915 P.2d 72 (1996), where Starr was charged, bound over, and arraigned on premeditated murder or, in the alternative, felony murder, aggravated burglary, and aggravated assault. Prior to trial, the State dismissed the premeditated murder and aggravated burglary charges and proceeded to trial on felony murder and aggravated assault. At the close of the State's evidence, the State moved to reinstate the charge of premeditated murder. Starr objected, arguing that he would be prejudiced due to surprise. The trial court allowed the amendment, finding no new crime had been charged. On appeal,

Starr argued that the trial court did not have jurisdiction to try him on the charge of premeditated first-degree murder after the State had dismissed that charge prior to trial.

The *Starr* court noted that determining whether an amendment under K.S.A. 22-3201(e) should be permitted required a two-part analysis: (1) whether an additional or different crime was charged by the amendment and (2) whether the amendment prejudiced the substantial rights of the defendant. 259 Kan. at 718. The *Starr* court, citing *Barncord*, observed that a prosecution under the felony-murder rule changed the proof necessary to prove first-degree murder by relieving the State of the burden of proving premeditation and malice. 259 Kan. at 719. The *Starr* court observed that the facts in *Starr* were similar to both *Grissom* and *Barncord*. The court noted that, although the State could have originally proceeded on both the premeditated and felony-murder theories without electing between them, the State had elected to dismiss the charge of premeditated murder after the arraignment. Therefore, the question in *Starr* was what effect the dismissal of the charge after the arraignment had on the State's ability to later proceed on both theories of first-degree murder. 259 Kan. at 719.

The *Starr* court first addressed the defendant's argument that once a charge is dismissed, the district court loses jurisdiction over that charge. The court determined that since the charge of first-degree felony murder had not been dismissed, the district court retained jurisdiction over the statutory crime of first-degree murder. 259 Kan. at 720.

The *Starr* court next addressed the defendant's due process argument. Starr argued that by dismissing the premeditated murder charge, the State had indicated to the defense counsel that premeditation and intent were neither in dispute nor legally relevant and, therefore, he had no reason to prepare a defense against those issues. According to Starr, the amendment was a surprise, causing prejudice and denying him due process of law. In rejecting the due process argument, the *Starr* court noted that during oral argument, Starr's counsel had asserted that questions he would normally have asked witnesses upon cross-examination were not asked because the charge of premeditated murder had been dismissed at the be-

ginning of trial. When asked by the court what questions would have been asked, counsel could furnish none. The *Starr* court stated:

"The entire defense to the charge of murder at trial was one of alibi. On cross-examination, the defendant, consistent with his defense, attacked the credibility of the State's witnesses placing him at the scene. Under these circumstances, we perceive no prejudice flowing from the amendment at the close of the State's case.

"Moreover, the State's amendment to proceed on the theory of premeditated murder created no unusual surprise for the defendant. Originally, the defendant was charged under both theories, and only immediately prior to trial was the premeditated murder theory dismissed. Under the circumstances, the defendant should have been prepared to defend against both theories.

"Finally, the theory of felony murder relieves the State of the burden of proving premeditation and malice. [Citations omitted.] Instead, these elements are established through proof of the collateral felony. [Citation omitted.] Absent this theory, the State must prove premeditation. The amendment at the close of the State's case to include the alternate theory of first-degree premeditated murder had the effect of creating a greater burden on the State by requiring the State to prove intent and premeditation." 259 Kan. at 720-21.

It is important to note it was only after there was a judicial determination of probable cause and after Starr was bound over and arraigned on the charge of premeditated first-degree murder that the State dismissed the charge. Thompkins, on the other hand, was not bound over on premeditated first-degree murder because at the preliminary examination the judge found the evidence insufficient.

These cases indicate that the trial judge can allow an amendment of a complaint or information to charge premeditated murder when no additional crime is charged and the defendant's substantial rights are not prejudiced. None of the cases relied upon by the State deals with the consequences of a judge's dismissal of a first-degree premeditated murder charge because of insufficient evidence at the preliminary examination and a subsequent refusal by the trial judge to allow the State to proceed on an amended complaint which included that charge.

## II. Due Process

One of the substantial rights of an individual charged with a crime is the right to due process. The essential elements of due

process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *Crane v. Mitchell County U.S.D. No.* 273, 232 Kan. 51, 56, 652 P.2d 205 (1982).

Except so far as Congress may provide penal remedies for execution of federal powers, the bulk of authority to legislate on the subject of criminal justice is the responsibility of the individual states. U.S. Const., art. 1, § 8. The State has power to prescribe a method of procedure in prosecution for violation of its criminal laws, and it is immaterial whether its laws are the result of statute or whether they are decisions of Supreme Court as to what state law is. *Andrews v. Hand,* 190 Kan. 109, 115, 372 P.2d 559, *cert. denied* 371 U.S. 880 (1962).

### III. The Code of Criminal Procedure

The provisions of the Kansas Code of Criminal Procedure (Code) govern proceedings in all criminal cases in the courts of the state of Kansas. K.S.A. 22-2102. The Code is intended to provide for the just determination of every criminal proceeding. Its provisions are construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. K.S.A. 22-2103. As related to criminal law and procedure, "substantive law" is that which declares what acts are crimes and prescribes punishment therefor, whereas "procedural law" is that which provides or regulates steps by which one who violates a criminal statute is punished. *State v. Augustine,* 197 Kan. 207, Syl. ¶ 1, 416 P.2d 281 (1966).

Thompkins admits that, under proper circumstances, the Code permits a complaint or information to be amended before a verdict or finding if no additional or different crime is charged and if his substantial rights are not prejudiced. Thompkins argues that because the State disregarded the statutory procedures, the premeditated murder conviction violated his procedural due process rights and he is entitled to a new trial on that charge.

We note that rules of practice and procedure contained in the Code are devised to promote the ends of justice, not to defeat them, and orderly rules of procedure should not require sacrifice

of the rules of fundamental justice. See *Hormel v. Helvering*, 312 U.S. 552, 557, 85 L. Ed. 1037, 61 S. Ct. 719 (1941). A determination of whether Thompkins' substantive and procedural due process rights were violated must first take into account the consequences of the State's actions after the dismissal of the premeditated murder charge at the preliminary examination.

Although the Fifth Amendment to the United States Constitution provides that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, the states can commence a prosecution by filing a complaint and presenting sufficient evidence to a magistrate conducting a preliminary examination to bind the defendant for arraignment and trial. Even though there is no constitutional right to a preliminary examination, the United States Supreme Court has held that the Fourth Amendment, by incorporation of the Due Process Clause of the Fourteenth Amendment, requires the states to provide substantive and procedural due process rights to insure a fair and reliable determination of probable cause prior to detention and prosecution of an individual. See *Gerstein v. Pugh*, 420 U.S. 103, 112-13, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975). Therefore, if the State elects not to proceed with a presentment to a grand jury, there are substantive and procedural due process requirements it must provide.

The Code requires that every person arrested on a warrant charging a felony shall have a right to a preliminary examination before a magistrate, unless such warrant has been issued as a result of an indictment by a grand jury. K.S.A. 22-2902(1). The right to a preliminary examination in Kansas is purely statutory. It is mandated neither by general constitutional privileges nor the requirement of constitutional due process. *State v. Smith*, 225 Kan. 796, Syl. ¶ 1, 594 P.2d 218 (1979). The United States Supreme Court discussed the constitutional requirements of a preliminary examination in *Gerstein v. Pugh*, 420 U.S. at 112-13 (citing *Johnson v. United States*, 333 U.S. 10, 13-14, 92 L. Ed. 436, 68 S. Ct. 367 [1948]). The Court stated: "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause

be decided by a neutral and detached magistrate whenever possible." 420 U.S. at 112.

The *Gerstein* Court held that the Fourth Amendment, incorporated into the Fourteenth Amendment, requires that the states afford a defendant in a criminal case a timely judicial determination of probable cause as a prerequisite to detention. 420 U.S. at 126.

The preliminary examination is an important part of Kansas criminal procedure. It is protection for an accused and an instrument for justice. The preliminary examination affords the person arrested as a result of a complaint an opportunity to challenge the existence of probable cause for further detention or for requiring bail and apprises the accused about the nature of the crime charged and the sort of evidence he or she will be required to meet when subjected to final prosecution. *State v. Boone*, 218 Kan. 482, 485, 543 P.2d 945 (1975), *cert. denied* 425 U.S. 915 (1976). The principal purpose of a preliminary examination is the determination of whether it appears that a crime has been committed and probable cause to believe the defendant committed the crime. To bind the accused over for arraignment and trial, the State need not establish guilt beyond a reasonable doubt. *State v. Jones*, 233 Kan. 170, Syl. ¶ 2, 660 P.2d 965 (1983).

At the close of a preliminary examination, the magistrate's choices are to bind the defendant over or to enter an order of discharge. *State v. Leslie*, 237 Kan. 318, 319, 699 P.2d 510 (1985). The examining magistrate has no power to acquit but only the power to discharge from custody. Such a discharge is not a bar to another preliminary examination. *State v. Turner*, 223 Kan. 707, 709, 576 P.2d 644 (1978). Where the evidence is insufficient to show that it appears that a felony has been committed and that the defendant committed it, the magistrate must discharge the defendant. *State v. Engle*, 237 Kan. 349, 350, 699 P.2d 47 (1985). If the evidence is sufficient, the defendant must be bound over for arraignment. K.S.A. 22-2905(1) requires the prosecutor to file an information charging only the crime or crimes for which the defendant is bound over prior to the arraignment.

When the examining magistrate fails to bind the defendant over to the district court for trial on a charge which is warranted by the

evidence, one of the State's remedies is to dismiss all charges and file another complaint or file an appeal pursuant to K.S.A. 22-3602. See *Turner*, 223 Kan. at 709. Here, the State acknowledged that it was aware that it could appeal the dismissal of the complaint pursuant to K.S.A. 22-3602(b)(1), which provides that appeals to this court may be taken by the prosecution from cases before a district judge as a matter of right from an order dismissing a complaint, information, or indictment. The State chose neither to appeal the judge's discharge of the claim of premeditated murder nor to dismiss the remaining charges and file another complaint. Therefore, Thompkins was bound over and arraigned on the charges which the judge determined were sufficiently supported by the evidence. These charges did not include the charge of premeditated murder.

Here, following the dismissal of the charge of premeditated murder at the preliminary examination, the State did not (1) dismiss the complaint, file a new complaint, and present evidence at a subsequent preliminary examination; (2) follow the statutory procedure to appeal the judge's dismissal of the charge; or (3) file an information stating the crimes for which the defendant was bound over. Instead, after the defendant had been arraigned without a proper information, the State chose to file an amended information which included the premeditated murder charge.

The existence of a complaint, information, or indictment filed against a defendant is a fundamental prerequisite to an arraignment. *State v. Smith*, 247 Kan. 455, Syl. ¶ 4, 799 P.2d 497 (1990). The arraignment in a criminal proceeding is the formal act of calling the defendant before a court having jurisdiction to impose sentence for the offense charged and informing the defendant of the offense charged by reading the complaint, information, or indictment, or stating to defendant the substance of the charge, and asking defendant whether he or she is guilty or not guilty or to otherwise plead as permissible by law. 247 Kan. 455, Syl. ¶ 3.

Prior to trial, the judge denied the State's request to proceed under the amended information. It was only after the State had presented its evidence to the jury that the trial judge agreed to instruct the jury on premeditated murder. At that point in the

proceedings, Thompkins had lost his right under K.S.A. 22-3208 to challenge any defect in the proceedings resulting from his discharge on the charge of premeditated murder after the preliminary examination.

Under these circumstances, Thompkins' substantial substantive and procedural due process rights were prejudiced; therefore, instructing the jury on premeditated murder was improper. We are required to set aside Thompkins' conviction for premeditated murder and remand the case to the district court for a new trial on the premeditated first-degree murder charge. Because we have ordered a new trial on the premeditated murder charge, we will not consider the other issues raised relating to this charge.

## IV. Post-Arrest Silence

During the State's direct examination of a police officer, the officer testified that he was assigned to interview Thompkins. He stated that he gave Thompkins the *Miranda* warnings. Then the officer was asked, "Did Mr. Thompkins make any statement to you at that time?" The officer replied, "A couple. I advised him of his rights and he told me he had nothing to say at that point." Counsel immediately objected and moved for a mistrial.

After reviewing the record, we find that the State improperly introduced evidence that the defendant had invoked his right to silence. Unless a different factual situation exists in the next trial, the fact that the defendant invoked his right to remain silent should not be admitted into evidence.

## V. Evidence of Probation

For his final issue, Thompkins contends the trial court erred in allowing into evidence the fact that he was on probation when the crime was committed and that he was required to report to his probation officer on a regular basis. Prior to trial, the judge ruled that evidence of Thompkins' prior record would not be admitted into evidence unless the defendant "opened the door." At trial, Thompkins testified that his purpose in going to Donnelly College on the day of the murder was to tell Frances that he was leaving town for Louisiana that day and to discuss plans for their daughter

and the sale of their house. He stated he had been planning to leave Kansas for 3 days.

At trial, out of the presence of the jury, the prosecutor stated she intended to call Thompkins' probation officer, Jack Phan, as a rebuttal witness. She indicated to the judge that the day before the murder (October 21), Thompkins was released from the Wyandotte County jail, where he had been held on a probation violation for failure to make restitution payments and failure to take a drug screening test. At a prior hearing in district court in the presence of his probation officer, Thompkins had stated he would make a $100 payment by borrowing money from various people and applying for disability. On the basis of this testimony, the district judge released Thompkins from jail. Thompkins received a 30-day extension to make the payment and was ordered not to leave the state without permission.

Defense counsel objected to admission of the testimony, arguing the State was attempting to backdoor Thompkins' prior criminal record into evidence. The trial court agreed to limit the testimony and instructed the probation officer not to reveal to the jury that the purpose of the hearing was to determine if Thompkins' probation should be revoked. The probation officer would be allowed to testify only as to the conditions of Thompkins' probation. The probation officer testified that the conditions of Thompkins' probation were that Thompkins make a $100 payment within 30 days, report in person to him at least twice per month before the next hearing, and not leave the state without permission. The probation officer testified that Thompkins had not advised him that Thompkins planned to leave the state.

Thompkins contends this evidence was of limited probative value and highly prejudicial because it degraded him and apprised the jury of other crimes he had committed without fulfilling the requirements of K.S.A. 60-455. Thompkins argues the admission of the evidence was error and violated his right to a presumption of innocence.

In support, Thompkins cites cases where the court has held the defendant did not receive a fair trial due to insinuations that he had appeared in a succession of police lineups, *State v. Taylor*, 198

Kan. 290, 424 P.2d 612 (1967), or because he was required to appear in court in prison garb, *State v. Hall*, 220 Kan. 712, 556 P.2d 413 (1976). Thompkins also relies upon cases dealing with the prosecution's improper use of K.S.A. 60-455 other crimes evidence in cross-examination of a defendant, such as *State v. Harris*, 215 Kan. 961, 529 P.2d 101 (1974), and *State v. Macomber*, 241 Kan. 154, 734 P.2d 1148 (1987), *cert. denied* 493 U.S. 842 (1988).

Thompkins, in relying on the cited cases, fails to note that the evidence here was admitted as rebuttal evidence.

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal [evidence] rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice." *State v. Prouse*, 244 Kan. 292, Syl. ¶ 2, 767 P.2d 1308 (1989); *State v. Weigel*, 228 Kan. 194, Syl. ¶ 9, 612 P.2d 636 (1980).

The court addressed a similar issue in *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), where the defendant appealed his convictions of first-degree murder and two counts of theft. Hall's former wife had testified that she and Hall had driven their truck to visit friends in April 1984. Hall contended that the trial court erred in allowing the State to elicit rebuttal testimony that the April visit was not possible because in March 1984 , the truck had been confiscated as stolen by Hall.

The court rejected Hall's contention that the admission of the rebuttal evidence was improper because it violated the requirement for admission of K.S.A. 60-455 (other crimes) evidence stated in *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974), *overruled on other grounds State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976). The *Hall* court noted *Bly* was a case interpreting K.S.A. 60-455 but, in Hall's case, the testimony was not introduced under K.S.A. 60-455. The *Hall* court found that the defendant had opened the door to the testimony regarding confiscation of the stolen truck by attempting to impeach his former wife's testimony that they had

visited friends on the same trip during which the victim was killed. Under the circumstances, the State's rebuttal evidence which contradicted Hall's version was proper because " '[w]hen the defendant opens a subject on direct or cross-examination, the State may develop and explore various phases of that subject.' " 246 Kan. at 743 (quoting *State v. Chatmon*, 234 Kan. 197, 203, 671 P.2d 531 [1983]).

A similar issue regarding rebuttal testimony was addressed in *State v. Burnett*, 221 Kan. 40, 558 P.2d 1087 (1976). In *Burnett*, the defendant appealed his convictions of first-degree murder and aggravated robbery. He argued the trial court erred in allowing rebuttal witnesses to testify to prior crimes he committed in Oklahoma. The defendant contended this was improper rebuttal testimony in violation of K.S.A. 60-421 (limitations on evidence of conviction of crime as affecting credibility) and 60-455.

The *Burnett* court disagreed, noting that the evidence was introduced solely for rebuttal purposes. 221 Kan. at 43. The court, in distinguishing evidence of other crimes and civil wrongs, stated:

"Rebuttal evidence is that which is presented to deny some fact an adverse party has attempted to prove or has placed in dispute. [Citations omitted.] . . . The use and extent of rebuttal rests in the sound discretion of the trial court. [Citations omitted.] The ruling of the trial court will not be ground for reversal unless it appears discretion has been abused to appellant's prejudice. [Citations omitted.]"

The court continued:

"When a defendant takes the stand, he takes his character and integrity with him and cannot complain because he is subjected to the same inquiries and tests as other witnesses. [Citations omitted.] This includes the right to cross-examine a defendant within the limits of K.S.A. 60-421. [Citation omitted.] Furthermore, cross-examination of an accused in a criminal case is subject to the same rules which apply to any other witnesses. [Citation omitted.] For this reason, a defendant waives immunity on matters to which he testifies and may be cross-examined further on those subjects. . . .

. . . .

"While a defendant has a privilege to testify or refuse to do so in his own defense, and is protected by K.S.A. 60-421 and 60-455, those privileges and protections cannot be construed as a license to commit perjury with impunity. [Citations omitted.]" 221 Kan. at 43-44.

Here, Thompkins stated on direct examination that his reason for visiting Frances at Donnelly College was to tell her he was leaving town and moving to Louisiana. Having opened the door to this topic (leaving town), it was proper rebuttal for the State to call the probation officer to testify that there was a court order preventing Thompkins from leaving town without permission. Thompkins' analysis is flawed because the testimony was admitted as rebuttal evidence and not as K.S.A. 60-455 evidence.

Thompkins' conviction for burglary is affirmed. Thompkins' conviction for premeditated first-degree murder is reversed, and the case is remanded for further proceedings on the charge of premeditated first-degree murder.

Affirmed in part, reversed in part, and remanded.

ALLEGRUCCI, J., concurring: I concur in the result reached by the majority. I agree that Thompkins' due process rights were violated; however, in my opinion, the changes made by the legislature in 1994 had an impact on that determination. In 1994, the legislature amended the parole/postrelease eligibility statute, K.S.A. 1993 Supp. 22-3717, to provide for life imprisonment without possibility of parole for 25 years for premeditated murder (K.S.A. 1994 Supp. 22-3717[b][1]), while the maximum sentence for felony murder is life imprisonment with parole eligibility after 15 years (K.S.A. 1994 Supp. 22-3717[b][2]). This court has held that felony murder and premeditated murder are not separate offenses but, rather, alternative means of committing first-degree murder. By providing for different punishments for the "same offense," the legislature has brought into question that decision, raising several questions that this court will be required to address in future first-degree murder cases. I am not prepared to find that premeditated murder and felony murder are separate offenses, but the 1994 changes affect the determination of whether Thompkins' due process rights were violated.

SIX, J., dissenting: Solly Thompkins asserts that the district court had no jurisdiction to instruct on first-degree premeditated murder. He also reasons that felony murder and premeditated murder

are no longer the same offense. The majority locates a due process issue and reverses. I disagree with both Thompkins and the majority. Thompkins neither raises a due process argument regarding the premeditated murder instruction nor establishes that he was prejudiced in advancing his defense. He was not surprised by the instruction.

I would affirm Thompkins' conviction for premeditated murder. Count I of the information charged Thompkins with first-degree felony murder, citing K.S.A. 21-3401. Felony murder and premeditated murder are alternate theories of first-degree murder although different punishments are now provided. They are not separate and distinct offenses but are alternate means of committing the same crime. When Thompkins was bound over on the first-degree felony murder charge, the court retained jurisdiction to instruct the jury on either theory. The State had authority to amend the complaint under K.S.A. 22-3201(e) to include premeditated murder. The cases on the alternate means character of murder, cited in the majority opinion, reflect our consistent endorsement of murder as one offense. See *State v. Starr*, 259 Kan. 713, 718, 719, 915 P.2d 72 (1996), for a recent affirmation. How can premeditated and felony murder be separate crimes when there is only one homicide? First-degree murder has unique characteristics forged both by legislative action (K.S.A. 21-3401) and our decisions.

The questions at the preliminary hearing were: (1) Was a felony committed, and (2) is there probable cause to believe Thompkins committed it? Thompkins was properly bound over on first-degree felony murder.

Thompkins failed to object to the premeditation instruction at the instruction conference. The court asked, "Have both sides had an opportunity to go over the instructions?" Thompkins' counsel responded, "I have your honor. I have no objections to them." Generally, no party may assign as error the giving of an instruction unless an objection is made before the jury retires. The objection must state distinctly the matter objected to and the grounds for the objection, (unless the instruction is clearly erroneous). K.S.A. 22-3414(3).

Thompkins failed to object to the court's ruling that it would later decide if a premeditation instruction was justified. The court said: "After all of the evidence is in, I'll make another ruling as to whether or not premeditated should come in or not. That ruling will determine how we go into closing remarks and instructions." The court then asked defense counsel for any comments. Counsel responded: *"I have no comments on the Court's ruling."* (Emphasis added.) Thompkins knew before trial commenced that the State would be asking for a premeditation instruction if the evidence supported it.

The majority suggests that the State could have taken an appeal after the preliminary hearing. A K.S.A. 22-3602(b)(1) appeal would have been proper if the complaint had been dismissed in its entirety. *State v. Freeman,* 234 Kan. 278, 670 P.2d 1365 (1983). Here, however, Thompkins was bound over on Count I, murder (under the felony-murder alternative) and on all other charges.
We said in *Freeman:*

"[T]here is no statutory authority for the State to appeal from the dismissal in a criminal case of some of the counts of a multiple-count complaint, information or indictment while the case remains pending before the district court on all or a portion of the remaining counts which have not been dismissed and which have not been finally resolved." 234 Kan. at 282.

See *State v. Clovis,* 254 Kan. 168, 171, 864 P.2d 687 (1993).

Although not raised by Thompkins, the majority suggests that he lost his K.S.A. 22-3208 rights to challenge any defect in the proceedings by the time the court agreed to instruct on premeditated murder. That point in time was at the instruction conference. Defense counsel told the court he had no objection to the instructions. K.S.A. 22-3208 is directed to motions before trial. The majority also advances on its own a K.S.A. 22-2905(1) procedural concern about the filing of the information. Thompkins has not raised a K.S.A. 22-2905(1) issue. Any concern is countered by K.S.A. 22-3208(3) (defects in the information not raised before trial, except as to jurisdiction, are waived).

The district court protected Thompkins' interest by excluding reference to premeditation in the State's opening statement. The court evaluated the first-degree murder evidence, listened to ar-

gument of counsel on what the evidence showed, and reasoned that the State had established a reasonable inference of premeditation. The record reflects no surprise, no obligation, and no prejudice.

MCFARLAND, C.J., and DAVIS, J., join in the foregoing dissent.