242 P.3d 1197 (2010)
STATE of Kansas, Appellee,
v.
Ruben CALDERON-APARICIO, Appellant.
No. 101,299.
Supreme Court of Kansas.
October 29, 2010.
*1201 Randall L. Hodgkinson, of Kansas Appellate Defender Office, for appellant.
Steven J. Obermeier, assistant district attorney, Stephen M. Howe, district attorney, and Steve Six, attorney general, for appellee.
Before GREENE, P.J., GREEN and STANDRIDGE, JJ.
GREEN, J.
Ruben Calderon-Aparicio appeals from his jury trial convictions for possession of marijuana with intent to sell, distribute, or deliver and no tax stamp. First, Calderon-Aparicio argues that there was insufficient evidence to prove that the crimes occurred in Johnson County. Nevertheless, after looking at the evidence in the light most favorable to the State, we determine that there was sufficient evidence for a rational factfinder to find beyond a reasonable doubt that the crimes occurred in Johnson County. Next, Calderon-Aparicio maintains that the eyewitness show-up identification used in this case violated his due process rights. Nevertheless, because Calderon-Aparicio failed to object to the introduction of this evidence at trial, he did not preserve this issue for appellate review. Moreover, even if this issue had been adequately preserved for appellate review, it would still fail. Based on the circumstances present here, the eyewitness identification procedure utilized by the officers in this case was not impermissibly suggestive, and there was not a substantial likelihood of misidentification in the procedure.
Finally, Calderon-Aparicio contends that the trial court erred in allowing the State to amend the complaint 2 days before trial to change the charge of possession of marijuana with intent to sell to possession of marijuana with intent to sell, deliver, or distribute. We disagree. The State's amendment of the complaint did not charge an additional or different crime but rather added alternative theories for the charged crime. Moreover, the amendment of the complaint did not prejudice Calderon-Aparicio's substantial rights. As a result, Calderon-Aparicio's argument on this issue fails. Accordingly, we affirm.
Around 7 p.m. on April 30, 2007, Timothy Edwards and his wife were traveling to the hospital to admit Edwards' wife, who was 9 months pregnant. Edwards' wife was driving their van, and Edwards was riding in the passenger seat of the van. As Edwards' wife drove onto the southbound ramp to Interstate 435 at Midland Drive, Edwards saw a van with a trailer attached to it along the side of the road.
As Edwards and his wife passed the van, Edwards turned around and saw two men walking beside the van. According to Edwards, the men were acting nervous and were looking over at a police officer, who was behind another car across the street. Edwards testified that he watched one of the men walk towards a drainage ditch and stuff a luggage bag into a drainage pipe. According to Edwards, while the man stuffed the luggage bag into the drainage pipe, the other man stayed near the van. Edwards testified that after he saw the man stuff the bag into the drainage pipe, he immediately called 911 and reported the incident.
According to Edwards, he was able to see the two men for about 15 seconds, which was the time it took for his wife to accelerate onto Interstate 435. Moreover, Edwards testified that the man who stuffed the bag into the drainage pipe was facing Edwards while he was walking down the slope of the drainage *1202 ditch but then the man turned around to put the bag in the drainage pipe.
Officer Lewis Jones and Officer Stewart Bloomfield, who was a police officer with the City of Shawnee, were sent to the intersection of Interstate 435 and Midland Drive around 7 p.m. after a report was received that a van pulling a car was blocking traffic. When Bloomfield arrived in the area, Jones was filling out a green sticker for the car and told Bloomfield to check out the van, which was on the other side of the street. Bloomfield testified that he was told about Edwards' 911 call right around the time that Bloomfield arrived at the scene.
Bloomfield testified that when he approached the van, there were two men with the van. The hood of the van was up, and smoke was coming from the van. The van had a Chihuahua, Mexico, license plate, and the two men, Calderon-Aparicio and Jose Saloman Barraza-Garcia, produced Chihuahua, Mexico, driver's licenses. According to Bloomfield, Calderon-Aparicio told him that they had just bought a car at auction and were transporting it back to Mexico for resale when their van broke down.
Bloomfield testified that when he mentioned a bag, both men became extremely nervous and started looking around. According to Bloomfield, one of the men even glanced towards the ditch when Bloomfield motioned towards it. Bloomfield testified that Barraza-Garcia tried to get into the van, but Bloomfield closed the door and made the two men stand in front of the van. Bloomfield testified that as he closed the door, he saw an electronic relay box with electrical tape on it that was hanging below the driver's side dashboard. According to Bloomfield, an electronic relay box, which typically leads to a hidden compartment, is one of the big indicators of drug trafficking.
Bloomfield testified that after he ran a warrants check on the two men, Officer Stirling arrived at the scene and headed towards the drainage ditch. When Stirling stated that he had found something inside the ditch, Bloomfield went down to the ditch area. Bloomfield testified that Stirling pointed towards a concrete drainage pipe, and Bloomfield jumped down into the drainage ditch and pulled a black bag out of the drainage pipe. Upon discovering that the bag contained bundles of what appeared to be narcotics, the officers arrested Calderon-Aparicio and Barraza-Garcia.
A total of 21 bundles of vegetation were found inside the bag. No Kansas drug tax stamp was affixed to any of the bundles. Later testing revealed that all 21 bundles tested positive for marijuana and that their total weight was about 42 pounds. Each of the 21 bundles and the black bag that contained the bundles were analyzed for fingerprints, but there were no prints of value for comparison purposes found on the items.
After Calderon-Aparicio and Barraza-Garcia were arrested, police searched their van. According to Bloomfield, a bill of sale for the car, business cards, and hotel room key cards were found in the van. In addition, Bloomfield testified that multiple cell phones were found inside the van, and one cell phone was found on Calderon-Aparicio. Bloomfield further testified that based on his training, he knew that one of the indicators of drug activity is when the number of cell phones is greater than the number of people in a location. According to Bloomfield, when drugs are being taken across the country, the person who is giving the drugs to a second person will also give the second person a cell phone so that they can stay in contact.
Upon arresting Calderon-Aparicio and Barraza-Garcia, Bloomfield called Edwards and asked him to return to the area where the incident occurred to identify the men. According to Bloomfield, Edwards was asked over the telephone about which man had the bag, and Edwards described the man's clothing and stated that the older man with the mustache was the one who had the bag. Calderon-Aparicio was approximately 4 years older than Barraza-Garcia and was the only one with a mustache.
Once Edwards arrived at the scene, Calderon-Aparicio and Barraza-Garcia were taken out of the patrol car and placed where Edwards could see them. According to Edwards, the police had him roll down his window, write out a statement, and then stick his head out the window to identify the men. *1203 Edwards testified that the men were approximately 10 feet away from him and were standing behind his van and off to the side. Bloomfield testified that Edwards pointed to Calderon-Aparicio as the one with the bag and also described Calderon-Aparicio's clothing and the fact that he was the only one with a mustache. Edwards testified that he was able to recognize Calderon-Aparicio as the same man who stuffed the bag into the drainage pipe. At trial, although Calderon-Aparicio no longer had a mustache, Edwards identified him as the person he saw stuffing the bag into the drainage pipe.
After that, Calderon-Aparicio and Barraza-Garcia were taken to the police station, and the van and car were impounded and searched. Bloomfield testified that in the car, the screws holding up the quarter panels were stripped because they had been removed so many times, which was an indicator that drugs had been smuggled in those compartments. Moreover, Bloomfield testified that the car's transmission was in the trunk and the car's engine had numerous parts taken off, which also indicated that items had been smuggled in both the transmission and engine.
Calderon-Aparicio was charged with one count of possession of marijuana with the intent to sell in violation of K.S.A. 65-4163(a) and K.S.A. 65-4105(d)(16) (count one) and one count of no drug tax stamp in violation of K.S.A. 79-5208 (count two). Three days before trial, the State successfully moved to amend count one of the complaint to charge possession of marijuana with the intent to sell, distribute, or deliver.
At trial, Calderon-Aparicio testified that on April 30, 2007, he and Barraza-Garcia had picked up a car and were driving through Kansas City to take the car back to Mexico. Calderon-Aparicio testified that he worked for Barraza-Garcia as a mechanic and that part of his job was to look at the cars that Barraza-Garcia wanted to buy and to determine if they were good cars. According to Calderon-Aparicio, as they were driving through Kansas City, their van began to malfunction. When they pulled onto an exit ramp and were in an intersection, the van turned off and smelled like smoke. Calder-on-Aparicio testified that after he and Barraza-Garcia worked to unhitch the car and trailer and move the van and car to the sides of the road, he took out his tools, lifted the hood of the van, and tried to fix what was wrong.
According to Calderon-Aparicio, he did not see Barraza-Garcia once he started working on the van. Calderon-Aparicio denied that he was the person whom Edwards saw stuff the bag into the drainage pipe. Moreover, Calderon-Aparicio testified that he had never possessed or held onto the black bag at any time, that he had never seen the marijuana, and that he had never even used drugs.
The jury found Calderon-Aparicio guilty of both charges of possession of marijuana with the intent to sell, distribute, or deliver and no drug tax stamp. The trial court sentenced Calderon-Aparicio to a controlling sentence of 23 months in prison.

I. Sufficiency of the Evidence

First, Calderon-Aparicio argues that the evidence was insufficient to show that the crimes were committed in Johnson County, which was a necessary element of the charged crimes.
When a defendant challenges the sufficiency of the evidence in a criminal case, an appellate court reviews all the evidence in the light most favorable to the State to determine whether the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. State v. Trautloff, 289 Kan. 793, 800, 217 P.3d 15 (2009).
In order to prove both the charge of possession of marijuana with the intent to sell, distribute, or deliver and the charge of no drug tax stamp, the State needed to establish that the charged acts occurred in Johnson County, Kansas, on or about April 30, 2007.
Generally,
"venue is a question of fact for the jury to determine in the trial of the case in chief. Venue may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission *1204 of the crime or crimes may be fairly and reasonably inferred. [Citations omitted.]" State v. Pencek, 224 Kan. 725, 729, 585 P.2d 1052 (1978).
In recognizing that other competent evidence may be sufficient to establish venue of an offense, our Supreme Court in State v. Griffin, 210 Kan. 729, 731, 504 P.2d 150 (1972), stated as follows:
"It is true that under the provisions of K.S.A. 1970 Supp. 22-2602 [now 1971 Supp.], prosecution must be had in the county where the crime was committed. This court has recognized on many occasions that the venue of an offense is jurisdictional, and it must be proved to establish the jurisdiction of the court. However, it is not necessary to prove the jurisdictional facts of venue by specific question and answer that the offense occurred in the particular county. It may be established by other competent evidence showing the offense was committed within the jurisdiction of the court."
Our Supreme Court in Griffin cited to its earlier decision in State v. Jones, 204 Kan. 719, 466 P.2d 283 (1970), where the defendant argued that the Ford County District Court lacked jurisdiction over the alleged crime of statutory rape because the evidence failed to establish venue of the offense in Ford County. In rejecting the defendant's argument, our Supreme Court stated that venue was a question of fact for the jury. Our Supreme Court noted that the jury had been given an instruction which required it to find beyond a reasonable doubt that the act occurred within Ford County. Our Supreme Court stated that the jury, by its guilty verdict, had found from the evidence that the offense occurred in Ford County.
In reviewing the evidence presented at trial, our Supreme Court in Jones looked at the fact that the defendant's family lived in Bucklin which was located in Ford County, that the children were taken to the movies in Bucklin before the alleged statutory rape incident, and that there was no indication that the defendant drove an extended distance into the country when the alleged incident occurred. Our Supreme Court concluded: "Considering the entire record presented in this case, we cannot say the evidence upon which the jury based its finding was insufficient to sustain the finding that the offense was committed in Ford County." 204 Kan. at 724, 466 P.2d 283. Thus, our Supreme Court determined that the Ford County District Court had jurisdiction over the crime. 204 Kan. at 723-24, 466 P.2d 283.
More recently, our Supreme Court in State v. Stevens, 285 Kan. 307, 325-26, 172 P.3d 570 (2007), held that there was sufficient evidence to establish that the alleged crime was committed in Crawford County, although there was no specific testimony to that effect. In that case, the arresting officer testified that he worked for the Pittsburg Police Department in Crawford County and was on patrol duty when he was dispatched to a residence for a criminal trespass complaint. The officer arrived within minutes, and after gathering evidence, he arrested the defendant and transported him to the Pittsburg Police Department for testing.
In upholding this court's decision that the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the crime occurred in Crawford County, our Supreme Court stated:
"The Court of Appeals concluded that, based upon this evidence, the jury could have reasonably inferred that the events occurred in Crawford County. Additionally, there was no evidence that Justice had been dispatched outside of his jurisdiction to respond to a call concerning criminal trespass, and generally he would not have the authority to make an arrest as a law enforcement officer outside of his jurisdiction. 36 Kan.App.2d at 335 [138 P.3d 1262] (citing State v. Miller, 257 Kan. 844, 849, 896 P.2d 1069 [1995]). We agree that when the evidence is viewed in the light most favorable to the prosecution, it was sufficient to establish that Stevens committed the crime in Crawford County." 285 Kan. at 325-26, 172 P.3d 570.
Here, similar to Jones and Stevens, there was sufficient evidence from which the jury could find that the offense occurred in Johnson County. Bloomfield testified that he was a police officer for the City of Shawnee and *1205 was on duty on April 30, 2007, when he was dispatched to the intersection of Interstate 435 and Midland Drive for a motorist assist. Importantly, the Johnson County trial court and jury could take judicial notice that the city of Shawnee is located within Johnson County. See State v. Deutscher, 225 Kan. 265, 272, 589 P.2d 620 (1979) (finding sufficient evidence to establish venue where crime occurred in city of Ellis and trial court could take judicial notice that city of Ellis located in Ellis County); State v. Wilson & Wentworth, 221 Kan. 359, 361-62, 559 P.2d 374 (1977) (rejecting defendant's argument that evidence insufficient to establish that crime occurred in Cherokee County where evidence showed that crime occurred in city of Columbus and where jury and trial court "no doubt" took judicial notice of fact that Columbus located in Cherokee County); see also State v. Lieurance, 14 Kan.App.2d 87, 91, 782 P.2d 1246 (1989) ("A finding of venue by a Sedgwick County court when a Sedgwick County deputy testifies about an occurrence while he was on patrol, along with the mention of Kellogg, Armour, and Post Oak Streets, is based on substantial competent evidence.").
Further, the evidence in this case established that once the suspected marijuana was discovered, Bloomfield and the other two officers placed Calderon-Aparicio and Barraza-Garcia under arrest. Generally, Bloomfield would not have had the authority to make an arrest as a law enforcement officer outside of his jurisdiction. See State v. Stevens, 36 Kan.App.2d 323, 335, 138 P.3d 1262 (2006); State v. Miller, 257 Kan. 844, 849, 896 P.2d 1069 (1995) ("[G]enerally a police officer acting within his official capacity cannot make an arrest outside the jurisdiction from which his authority is derived.").
The evidence established that the suspected marijuana was taken to the Shawnee Police Department, where it was inspected. Each bundle was then tested for the presence of marijuana and analyzed for latent fingerprints at the Johnson County Criminalistics Laboratory. Indeed, the reports from the fingerprint analysis and the marijuana testing show that the analysis and testing was done in the Criminalistics Laboratory, Office of the Johnson County Sheriff.
Importantly, in determining the weight and credibility to give to the testimony in a case, a jury is allowed "to use common knowledge and experience in regard to the matter about which a witness has testified." See PIK Crim.3d 52.09. Here, based on all of the evidence presented at trial, a jury could fairly and reasonably infer that the place of the commission of the crime was in Johnson County.
At oral arguments, in contending that the evidence was insufficient to establish that the crime occurred in Johnson County, Calderon-Aparicio relied heavily on State v. Star, 27 Kan.App.2d 930, 10 P.3d 37 (2000). In Star, the defendant argued that there was insufficient evidence to convict him of the crime of sale of cocaine within 1,000 feet of a school when there was no evidence that the building referred to as Hickock School was used for school instruction, attendance, or extracurricular activities. In agreeing with the defendant's argument, this court noted that the State was required to prove that the school was "a structure used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12" under K.S.A. 1999 Supp. 65-4161(d). This court held that where such evidence is lacking, "a jury cannot not be allowed to speculate or infer through its own observations that the structure complies with the statutory definition of a school." 27 Kan. App.2d at 936, 10 P.3d 37.
Star differs significantly from this case in that the State was required to introduce evidence to meet a specific statutory definition of school under K.S.A. 1999 Supp. 65-4161(d). There was no indication in Star that the State had presented evidence of facts and circumstances from which the jury could fairly and reasonably infer that the transaction occurred within 1,000 feet of a school, as specifically defined by K.S.A. 1999 Supp. 65-4161(d). In the present case, however, the State presented significant evidence from which a jury could fairly and reasonably *1206 infer that the crimes occurred in Johnson County.
With all of the evidence presented to the jury in this casea Shawnee Police Officer's involvement in being dispatched to the scene of the incident and in arresting the defendant; the fact that the incident occurred at the intersection of Interstate 435 and Midland Drive; the fact that the evidence was taken to the Shawnee Police Department where it was inspected; and the Johnson County Sheriff Office's heavy role in analyzing and testing the suspected marijuana, we are convinced that a rational factfinder could have found that Calderon-Aparicio committed the crimes of possession of marijuana with the intent to sell, deliver, or distribute and no drug tax stamp in Johnson County beyond a reasonable doubt.

II. Eyewitness Identification

Next, Calderon-Aparicio contends that his due process rights were violated when the police used an unnecessarily suggestive show-up identification. Whether an eyewitness identification was unnecessarily suggestive in violation of a defendant's right to due process presents a mixed question of law and fact. An appellate court reviews the factual basis of the trial court's decision using a substantial competent evidence standard and the legal conclusions drawn from those facts using a de novo standard. See State v. Shumway, 30 Kan.App.2d 836, Syl. ¶ 4, 50 P.3d 89 (2002).

A. Failure to Preserve Issue for Appeal

Importantly, Calderon-Aparicio did not move to suppress evidence of this show-up identification before trial or object to introduction of this evidence at trial. As a general rule, defendants must object to an out-of-court identification during trial to preserve the issue for appeal. State v. Hunt, 275 Kan. 811, 813, 69 P.3d 571 (2003); State v. Edwards, 264 Kan. 177, 188-89, 955 P.2d 1276 (1998). This is consistent with the rule under K.S.A. 60-404 that "a party must lodge a timely and specific objection to the admission or exclusion of evidence in order to preserve the evidentiary question for review." State v. King, 288 Kan. 333, 348, 204 P.3d 585 (2009).
The purpose of the contemporaneous objection rule is to avoid the use of tainted evidence and thereby avoid possible reversal and a new trial. 288 Kan. at 342, 204 P.3d 585. As our Supreme Court recently stated in State v. Richmond, 289 Kan. 419, 429, 212 P.3d 165 (2009), "the trial court must be provided the specific objection so it may consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error."
There are, however, several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or assignment of wrong reason for its decision. State v. Dukes, 290 Kan. 485, 488, 231 P.3d 558 (2010).
Calderon-Aparicio points out that our Supreme Court in Hunt, 275 Kan. at 813, 69 P.3d 571, applied the second exception (consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights) to address the issue of whether the eyewitness identification was unnecessarily suggestive when the defendant failed to object to the out-of-court identification at trial. Moreover, Calderon-Aparicio argues that because the instant issue is not merely an evidentiary issue but also involves his due process rights, this court should apply the exceptions to address his argument.
Nevertheless, in more recent years, our Supreme Court in State v. King, 288 Kan. 333, 348-49, 204 P.3d 585 (2009), held that evidentiary claims must be preserved by a contemporaneous objection at trial in order for those claims to be reviewed on appeal:
"[T]he legislature's intent in enacting K.S.A. 60-404 is clear: a party must lodge a timely and specific objection to the admission *1207 or exclusion of evidence in order to preserve the evidentiary question for review.
"We stress today the importance of this legislative mandate. K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. See Baker [v. State], 204 Kan. [607] at 611, 464 P.2d 212 [(1970) ]. More importantly, this practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404.
"... From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims-including questions posed by a prosecutor and responses to those questions during trialmust be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal."
Since King, our Supreme Court has consistently "been refusing to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right." State v. Dukes, 290 Kan. at 488, 231 P.3d 558; see State v. Richmond, 289 Kan. 419, 429-30, 212 P.3d 165 (2009) (where our Supreme Court expressed concern that the contemporaneous objection rule "case-law exceptions would soon swallow the general statutory rule"); State v. Hollingsworth, 289 Kan. 1250, 1256-57, 221 P.3d 1122 (2009).
Based on our Supreme Court's recent holdings in King and Dukes, we determine that Calderon-Aparicio, by failing to object to introduction of the eyewitness identification into evidence at trial, has failed to preserve this issue for appeal.

B. Defense Strategy

Moreover, even if Calderon-Aparicio had properly preserved this issue for our review, we would determine that his argument fails because the record demonstrates that the defense elected to cross-examine the eyewitness identification procedure as part of its defense strategy. Our Supreme Court has held that "the failure to object to an in-court identification may be considered to be a defense strategy where the defendant elects to explore the circumstances of the pretrial identification in the presence of the jury by cross-examination. [Citation omitted.]" Edwards, 264 Kan. at 189, 955 P.2d 1276.
Here, during Edwards' cross-examination at trial, defense counsel explored the circumstances of Edwards' eyewitness identification through cross-examination. Specifically, defense counsel was able to elicit testimony that Edwards was going approximately 55 miles an hour when he saw the alleged incident occur, that Edwards had turned around in his car to watch the men, that he saw the two men for only about 15 seconds before his wife merged into traffic, and that he was about 40 yards away from the man when the man actually put the bag into the drainage pipe. Later, during Calderon-Aparicio's direct examination, defense counsel elicited testimony that Calderon-Aparicio was busy working on the van after it broke down and that he did not know where Barraza-Garcia was during that time. This line of testimony suggested that Barraza-Garcia could have been the one to hide the bag in the drainage ditch.
During closing arguments, defense counsel focused on the facts surrounding Edwards' eyewitness identification to argue that the identification was not reliable:
"If [Edwards] is the passenger going up onto the highway, he is in the far side from it. His wife is here. He is actually having to look past her, through her to see what is going on. He is having to look through things through the compartments and stuff, so he is not going to have a clear sight in any regard.
"And then you have the fact that he isn't right up next to them. He is on the on *1208 ramp heading away at a rapid speed. He is making mistakes with regard to who he sees on here. You see that he cannot identify what the people were wearing. He cannot identify their hairstyle. He cannot identify the men by anything. Oh, he says there is a mustache. That is the only thing he remembers. But you know what? If you have got to  close proximity to one another, you have got confusion there. The thing is he can't remember anything else, anything else about it, not even the most important things. This bag. This bag. That is where eyewitness accounts are very dangerous. He isn't remembering the important facts of the case."
Defense counsel then pointed out that Calderon-Aparicio was working on the van when Bloomfield arrived at the scene and that it was Barraza-Garcia, not Calderon-Aparicio, who tried to get back in the van.
Based on how the witnesses were cross-examined at trial and defense counsel's closing argument, it is apparent that Calderon-Aparicio employed a trial strategy to challenge the weight to give to Edwards' eyewitness identification rather than to challenge the legal admissibility of the identification.

C. Two-Step Test for Determining Exclusion of Eyewitness Identification

Finally, under the two-step process for analyzing whether an eyewitness identification should be excluded, the record in this case shows that the eyewitness identification procedure was not impermissibly suggestive and did not lead to a substantial likelihood of misidentification.
In analyzing whether an eyewitness identification should be excluded, a court first determines whether the procedure used for making the identification was impermissibly suggestive. If the procedure is impermissibly suggestive, then the court considers whether the procedure led to a substantial likelihood of misidentification. State v. Trammell, 278 Kan. 265, 270, 92 P.3d 1101 (2004).
Under the second step, a court must consider the totality of the circumstances surrounding the identification as outlined by the following factors from Hunt, 275 Kan. at 817-18, 69 P.3d 571:(1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the confrontation; (5) the length of time between the crime and the confrontation; (6) the witness' capacity to observe the event, including his or her mental and physical acuity; (7) whether the witness' identification was made spontaneously and remained consistent thereafter or whether it was the product of suggestion; and (8) the nature of the event being observed and the likelihood that the witness would perceive, remember, and relate it correctly. Trammell, 278 Kan. at 270-71, 92 P.3d 1101.
In considering the first factor, that is, whether the eyewitness identification in this case was impermissibly suggestive, we note that the eyewitness identification was not a typical show-up identification. "A `show-up' is essentially one person, almost always in custody, sometimes in handcuffs, being identified by an individual who usually was the victim of the crime a short time before the identification." Hunt, 275 Kan. at 815, 69 P.3d 571. Here, however, Edwards was not the victim of a crime but instead was an independent caller who had observed two men walking beside a van and then had seen the suspicious activity of a man stuffing a bag into a drainage pipe near the side of an interstate. Moreover, Edwards was not shown one person but was instead shown both Calderon-Aparicio and Barraza-Garcia at the same time and asked to identify which one was the man he saw stuffing the bag into the drainage pipe.
Calderon-Aparicio points out that in State v. Lawson, 25 Kan.App.2d 138, 959 P.2d 923 (1998), this court determined that the two-person show-up identification procedure used in that case was not sufficiently distinct from a one-person show-up identification to be permissible. There, a robbery victim was shown two men and asked to identify which one was the perpetrator. The men were handcuffed and pulled out of police cars, and the robbery victim was shown one man at a *1209 time when asked to make the identification. This court determined that there were no exigent circumstances to justify suggestive procedure used by police officers to obtain an identification of the defendant as the robber. As a result, this court determined that the identification procedure was unnecessarily suggestive.
Unlike Lawson, this case did not involve a scenario where the police were searching for or in hot pursuit of a person fleeing a crime scene and then presented the crime victim with the person they found. Under such circumstances, a one-person or two-person show-up identification could be impermissibly suggestive because it would carry the potential of identifying the wrong person as present at the scene of the crime. In this case, however, it was pretty well established that both Calderon-Aparicio and Barraza-Garcia were the two men with the van after it broke down. When Edwards' call was received, the police were already at the location and close to where the two men were outside of their van. Calderon-Aparicio admitted that he and Barraza-Garcia were outside of the van after it broke down. There was no evidence about any other men being in the area during that time.
Thus, it is apparent that the only question for Edwards was which of the two men he saw stuff the bag into the drainage pipe. The evidence established that Edwards was shown both men when he returned to the scene and was asked to identify which man he saw stuffing the bag into the drainage pipe. There was no indication that the officers suggested one man over the other for Edwards' identification. Under these circumstances, the eyewitness identification procedure was not impermissibly suggestive.
Further, when considering the Hunt factors that are used in determining whether the procedure led to a substantial likelihood of misidentification, we note that Edwards testified that he was in the passenger seat of his van when he saw the two men. Edwards further testified that he was then able to turn and watch one of the men stuff a bag into the drainage pipe. Although Edwards acknowledged that his wife was accelerating onto the interstate at a rate of approximately 55 miles per hour while Edwards was watching the incident, Edwards was still able to tell the police over the telephone that the man stuffing the bag into the drainage pipe had a mustache and was older than the other man.
Moreover, the evidence presented at trial showed that a short amount of time (only about 25 minutes passed) between the time that Edwards called 911 and when the police contacted him about returning to the scene. Once Edwards returned to the scene that same evening, he was able to point out Calderon-Aparicio as the man stuffing the bag into the drainage pipe. There was no indication from the testimony presented at trial that Edwards had any hesitancy in pointing out Calderon-Aparicio or that Edwards' identification was the product of suggestion.
A review of the totality of the circumstances as presented by the evidence at trial leads to the conclusion that there was not a substantial likelihood of misidentification in the eyewitness identification procedure utilized in this case.

III. Amendment of Complaint

Finally, Calderon-Aparicio argues that the trial court erred in allowing the State to amend count one of the complaint, which charged possession of marijuana with intent to sell, to charge possession of marijuana with intent to sell, deliver, or distribute.
Under K.S.A. 22-3201(e), "[t]he court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." See State v. Starr, 259 Kan. 713, 718, 915 P.2d 72 (1996). Thus, the following two inquiries must be made as to "whether an amendment prior to submission of the case to the jury may be permitted: (1) Does the amendment charge an additional or different crime? [and] (2) Are the substantial rights of the defendant prejudiced by the amendment? [Citations omitted.]" State v. Matson, 260 Kan. 366, 370, 921 P.2d 790 (1996).
In State v. Bischoff, 281 Kan. 195, Syl. ¶ 7, 131 P.3d 531 (2006), however, *1210 our Supreme Court stated: "[T]he charging of a different crime may be allowed via an amended complaint before trial, provided the substantial rights of the defendant are not prejudiced." See State v. Woods, 250 Kan. 109, Syl. ¶ 1, 825 P.2d 514 (1992); State v. Niblock, 230 Kan. 156, 163, 631 P.2d 661 (1981). Whether to allow the amendment is subject to the trial court's discretion. Our Supreme Court has consistently given considerable latitude to the State in amending a complaint before trial. Bischoff, 281 Kan. at 205, 131 P.3d 531.
Citing State v. Schoonover, 281 Kan. 453, 495, 133 P.3d 48 (2006), Calderon-Aparicio asserts that if two charges require different elements to be proven, then they are not the same crime. Calderon-Aparicio maintains that the elements necessary to prove possession with intent to sell are different than the elements required to prove possession with intent to deliver or distribute, and therefore, the amendment in this case charged a different crime.
Nevertheless, Schoonover dealt with whether charges in a complaint under different statutes are multiplicitous. Our Supreme Court held that "the test to determine whether charges in a complaint or information under different statutes are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense; if so, the charges stemming from a single act are not multiplicitous." (Emphasis added.) 281 Kan. at 495, 133 P.3d 48. In addition, our Supreme Court held that "this same-elements test will determine whether there is a violation of § 10 of the Kansas Constitution Bill of Rights when a defendant is charged with violations of multiple statutes arising from the same course of conduct." (Emphasis added.) 281 Kan. at 495, 133 P.3d 48. As a result, the language in Schoonover is not applicable to the present case.
Our Supreme Court has held that the State's amendment of a complaint to charge an alternative theory for committing the same crime does not constitute the charging of an additional or different crime:
"Premeditated and felony murder are not separate and distinct offenses but are two separate theories under which the crime of first-degree murder may be committed. The amendment at the close of the State's case charging the defendant under the alternative theory of first-degree premeditated murder when the defendant had been charged with felony murder did not charge an additional or different crime." State v. Starr, 259 Kan. 713, 720, 915 P.2d 72 (1996).
Here, as in Starr, the State did not amend the complaint to charge an additional or different crime. The amended complaint did not permit the jury to convict Calderon-Aparicio of an offense different from the offense charged in the complaint. The amended complaint allowed alternative ways of committing a single offense. Here, count I of the complaint charged possession of marijuana with the intent to sell, and count I of the amended complaint charged possession of marijuana with the intent to sell, to distribute, or to deliver. K.S.A. 65-4163(a), the statute under which Calderon-Aparicio was charged, merely enumerates one or more ways of committing a single offense. See PIK Crim.3d 67.14. As a result, Calderon-Aparicio's argument fails.
Moreover, in reviewing the record in this case, we determine that the amendment should be upheld because Calderon-Aparicio's substantial rights were not prejudiced. Specifically, as the State points out, the evidence in this case was the same whether Calderon-Aparicio was charged with possession with the intent to sell or possession with the intent to sell, distribute, or deliver. Indeed, in objecting to the State's amendment of the complaint 3 days before trial, defense counsel admitted that the evidence remained the same.
Although Calderon-Aparicio asserts in his appellate brief that the amendment of the complaint 3 days before trial did not provide him with sufficient opportunity to prepare a proper defense against the new charge of delivery, he does not detail how his defense would have changed to meet the amendment. Calderon-Aparicio's defense at trial was that he never possessed the black bag with the marijuana and never placed the bag in the drainage pipe. Based on the evidence in the *1211 case, it would be difficult to ascertain how Calderon-Aparicio would have changed or modified his defense. Importantly, upon being questioned by the trial court about whether there was any unfair surprise with the amendment, defense counsel admitted that the defense "anticipated the arguments." As a result, the appellate record in this case fails to demonstrate any substantial prejudice to Calderon-Aparicio in the State's amendment of the complaint.
We find no abuse of discretion in the trial court's decision allowing the State to amend the complaint.
Affirmed.